**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

LEON McCALL, AIS 229186,           :

      Petitioner,                :

vs.                            :        CA 11-0507-KD-C

BILLY MITCHEM,              :

      Respondent.

## REPORT AND RECOMMENDATION

Leon McCall, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  This matter has been referred to the undersigned for the entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d).[1]

---

[1]      In light of the contents of this report and recommendation, the undersigned **DENIES** McCall's motion to hold his petition in abeyance (Doc. 6) pending his exhaustion of two claims asserted in the federal petition that he has presented to the states courts of Alabama via his fourth Rule 32 petition.

1

## BACKGROUND

On May 19, 2003, McCall entered a "best interest" counseled guilty plea to intentional murder. (*Compare* Doc. 1, at 2 *with* Doc. 13, Exhibit 1, Guilty Plea Transcript, at 20 *and* Doc. 13, Exhibit 4, at 1 n.1.) That same day, petitioner was sentenced to life imprisonment. (Doc. 13, Exhibit 1, Guilty Plea Tr. at 34.)

Petitioner filed written notice of appeal on June 23, 2003. (*See* Doc. 13, Exhibit 1, Notice of Appeal.)[2] The Alabama Court of Criminal Appeals affirmed petitioner's conviction and sentence by memorandum opinion entered on January 16, 2004. *McCall v. State*, 910 So.2d 833 (Ala.Crim.App. Jan. 16, 2004) (table).

> Pursuant to a negotiated plea agreement, the appellant, Leon McCall, was convicted of one count of intentional murder,[3] a violation of § 13A-6-2, Ala. Code 1975, and was sentenced to life imprisonment. McCall was also ordered to pay all statutorily mandated fines and assessments, court costs, and restitution in the amount of $4809.
>
> The record reveals that on May 19, 2003, McCall withdrew his not guilty plea, and entered a "best interest" plea to murder. During a lengthy plea colloquy, McCall stated that he understood his rights, that he understood the charge against him, and that he understood the minimum and maximum sentence that could be imposed upon conviction. McCall

---

[2]    Counsel was appointed to represent McCall on direct appeal. (*See* Doc. 13, Exhibit 2.)

[3]    "McCall was indicted for capital murder, pursuant to § 13A-5-40(a)(17), Ala. Code 1975, for the fatal shooting of his wife, Janice Eloise McCall, while she occupied a vehicle. He entered a 'best interest' plea, in accordance with <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), to the lesser-included offense of murder. []" (Doc. 13, Exhibit 4, at 1 n.1.)

acknowledged that by pleading guilty to the lesser offense of murder, he would not face the death penalty, but would, instead, be sentenced to a term of imprisonment of not less than 10 years nor more than life imprisonment. McCall also acknowledged the amount of the various fines and other costs that were to be imposed against him following entry of his plea. Finally, McCall stated that he had discussed all of the aforementioned matters with his attorneys.

McCall also executed an "Explanation of Rights and Plea of Guilty" form, which reflected the nature of the guilty plea and the appellant's understanding of his constitutional rights. The form apprised McCall of the correct sentencing range for a Class A felony. The court proceeded to read into the record a factual basis for McCall's plea, as supplied to him by defense counsel. The court then asked McCall if he believed that the State would be able to prove those facts at trial and that he would be convicted, McCall replied "I don't know. I just pled guilty." The court then asked McCall if he was pleading guilty because he felt that it would be in his best interest to do so, to which McCall replied "Yes, sir." The court then accepted McCall's plea and sentenced him, in accordance with the plea agreement, to life imprisonment.

On June 18, 2003, McCall filed a timely pro se motion to withdraw his best-interest guilty plea. McCall's motion alleged that he had not been correctly advised of the minimum and maximum punishment he faced upon pleading guilty; he also alleged that he believed that he would receive a 25-year sentence if he pleaded guilty. The trial court denied his motion on June 26, 2003, on the basis of the signed plea agreement, which clearly provided for a life sentence. This appeal followed.

I.

McCall challenges the issue of his competency to knowingly and voluntarily enter a best interest plea. The record reveals that on April 3, 2003, counsel filed a motion for a court-ordered mental evaluation. Following a hearing on all pre-trial motions, the trial court denied McCall's motion for a mental evaluation on April 30, 2003. McCall specifically intimates in his brief that he should have been allowed to withdraw his guilty plea because there was no proof that he was competent to enter the plea.

3

This claim is raised for the first time on appeal. Nevertheless, because this is a claim affecting McCall's competency to plead guilty to murder, the merits of this claim will be addressed. It is well-settled that a trial court has an independent duty to inquire into an accused's state of mind when there are reasonable grounds to doubt the accused's competency to stand trial.

A defendant does not have a right to a mental examination whenever he requests one, and, absent such a right, the trial court is the screening agent of such requests. It is left to the discretion of the circuit court as to whether there is reasonable doubt as to sanity and, thus, whether a further examination is required.

> In the absence of any evidence, the mere allegations by counsel that the defendant is incompetent to stand trial do not establish reasonable grounds to doubt the defendant's sanity and warrant an inquiry into his competency.

Contrary to McCall's contention, there was no basis for the trial court to inquire further into McCall's competency to stand trial. The motion for a court-ordered mental evaluation filed by McCall's counsel on April 3, 2003, appears to be a pre-printed form containing general allegations that track the language of Rule 11, Ala.R.Crim.P. No specific allegations concerning McCall's competency were added to the motion. Given that at the time the motion was filed, McCall was under indictment for capital murder, counsel filed the request for a mental evaluation out of an abundance of caution, rather than because counsel had any specific basis to doubt McCall's competency. Moreover, following the court's April 30, 2003, hearing on all pre-trial motions—including the motion for mental evaluation—the trial court denied McCall's request, thus finding no basis for further inquiry into McCall's competency to stand trial. Moreover, at the time McCall entered his plea, the trial court found that he had knowingly and intelligently waived his constitutional rights. There is nothing in the record to support McCall's allegation that he was incompetent when he entered a best-interest plea to the intentional murder of his wife, Janice Eloise McCall. Accordingly, no basis for reversal exists as to this issue.

4

II.

McCall also contends that his plea was involuntary because his attorney had represented to him that the State had offered a sentence of 25 years, and "at no time did Petitioner reject the 25-year offer." Thus, McCall contends, based on counsel's misrepresentation, he should have been allowed to withdraw his best-interest plea, given that he had nothing to lose by going to trial.[4]

The record contains a full transcript of the plea colloquy, during which McCall stated that he understood his rights, that he understood the charges contained in the indictment, and that he understood the minimum and maximum sentence that could be imposed upon conviction for capital murder and the lesser-included offense of intentional murder to which he was entering a plea.[5] McCall stated that he signed the plea agreement voluntarily and defense counsel stated that he had read the plea agreement with his client. McCall further stated that the sentence handed down from the court was what he agreed to in his plea agreement and that he did not wish to appeal.

The record also contains a signed copy of the plea agreement and an "Explanation of Rights and Plea of Guilty" form,[6] which placed McCall on notice of the correct sentencing range he faced for the charge to which he was pleading guilty. At no time did McCall raise the issue of a 25 year sentence. The trial court, in its discretion, determined that the guilty plea was knowingly and voluntarily entered.

While a misrepresentation by [] defense counsel as to the punishment to be imposed or the length of sentence may be a ground for

---

[4]      "Given that McCall faced the possibility of a death sentence if he proceeded to trial on the capital-murder charge, we find this comment to be somewhat disingenuous." (Doc. 13, Exhibit 4, at 4 n.2.)

[5]      "We note that the trial court correctly advised McCall of the range of punishment for murder." (Doc. 13, Exhibit 4, at 5 n.3.)

[6]      "This form is also known as an Ireland form." (Doc. 13, Exhibit 4, at 5 n.4 (citation omitted).)

withdrawing a guilty plea, a defendant's mere subjective belief or expectation as to his sentence, when it is unsupported by any promise form the State or indications by the court, is insufficient to set aside a guilty plea as unknowing or involuntary. Once the trial court has properly accepted a defendant's guilty plea, the court has sole discretion in determining whether the defendant should be allowed to withdraw that plea, and the trial court's decision will not be disturbed on appeal absent a showing of abuse of discretion. The court shall allow withdrawal of a plea of guilty when necessary to correct a manifest injustice. Rule 14.4(a)(1), Ala.R.Crim.P., requires the trial court, before accepting a guilty plea, to ascertain that the defendant has a full understanding of what a plea of guilty means and its consequences, by informing the defendant of and determining that the defendant understands the numerous rights specified in Rule 14.4(a)(1). Subsection (a)(1) requires a full colloquy to ensure that the defendant understands the meaning of the guilty plea and its consequences as required by <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969). Rule 14.4(a)(2) requires the trial court to determine that the plea is voluntary and not the result of force, threats, or coercion, nor any promise apart from the plea agreement that has been disclosed to the court as provided in Rule 14.3(b). Rule 14.4(d) provides that the trial court may comply with the requirements of Rule 14.4(a) by determining from a personal colloquy with the defendant that the defendant has read or has had read to him and understands each item contained in the "Explanation of Rights and Plea of Guilty" form. Although the record must affirmatively show the colloquy between the trial court and the defendant in which the defendant is shown to have a full understanding of the meaning of a guilty plea and its consequences, this colloquy may be supplemented by a validly executed <u>Ireland</u> form if the trial court ascertains, on the record, that the accused had read and understands the rights enumerated in that form.

   In the instant case, the trial court did not abuse its discretion in denying McCall's motion to withdraw his plea. The record before us contains the "<u>Ireland</u>" form which was signed by the appellant, his trial counsel, and the trial judge, and which encompassed the rights set out in Rule 14.4(a)(1). The form contains the following waiver signed by the appellant:

          I certify to the court that my attorney has read and

6

explained the matters set forth above; that my rights have been discussed with me in detail and fully explained; that I understand the charge or charges against me; that I understand my rights, the punishment or punishments provided by law as they may apply to my case and I understand the consequences of pleading guilty; that I am not under the influence of any drugs, medicines, or alcoholic beverages; and I have not been threatened or abused or offered any inducement, reward, or hope of reward to plead guilty other than the terms of the plea agreement which will be stated on the record.

I further state to the court that I am guilty of the charge to which I am entering a plea of guilty, that I desire to plead guilty, that I made up my own mind to plead guilty, and that I knowingly, intelligently, and voluntarily waive my right to a trial in this case. I further state to the court that I am satisfied with my attorney's services and his handling of my case.

The record also contains a complete transcript of the plea colloquy wherein the trial court ascertained that McCall fully understood his waiver of rights and the consequences of his plea. Therefore, the trial court properly denied McCall's motion to withdraw his plea; his claim to the contrary is without merit.

III.

McCall next argues that the trial court had no factual basis to support his plea, because he "was not in agreement that the State could prove" the evidence averred in the factual basis for the plea supplied to the court. We note that although McCall filed a motion to withdraw his guilty plea, the only ground contained in the motion was that his counsel had advised him that the plea agreement provided for a 25-year sentence—as opposed to the life sentence he received—and thus, he had been incorrectly advised of the minimum and maximum range of sentence.

McCall's claim that an insufficient factual basis existed for entry of

the plea was not presented to the trial court in any manner. Accordingly, it is not properly before this Court for review. It has long been the holding of this Court that only those specific claims presented to the trial court are properly raised for review on appeal. Because McCall raises this allegation for the first time on appeal, he is not entitled to any relief.

In any event, we note that, contrary to McCall's claim, the record[] reveals an adequate factual basis existed for his plea. Thus, no basis for reversal exists as to this issue.

IV.

McCall also alleges that he received ineffective assistance of counsel because: (1) there was no factual basis to support his plea; (2) he followed counsel's advice and entered his plea because he was afraid of spending the rest of his life in prison; (3) he "risked nothing in going to trial"; and (4) he relied on trial counsel's representation that the State had offered a 25-year sentence, as opposed to the life sentence he received. McCall further claims that had he gone to trial the jury might have found him guilty of manslaughter, based on the evidence that the shots that resulted in the death of the victim were accidental.[7]

A motion to withdraw a guilty plea is the functional equivalent of a motion for new trial. An ineffective assistance of counsel claim must be presented in a timely filed new trial motion . . . in order for that claim to be properly preserved for review on direct appeal. Thus, the question of whether McCall was denied the effective assistance of trial counsel is not preserved for this Court's review.

Based on the foregoing, the judgment of the trial court is affirmed.

---

[7]        "We note that there is nothing in the record that would support McCall's contention that the death of the victim might have been 'accidental,' entitling him to a possible defense on that basis. This Court is bound by the record and cannot consider statements in the appellant's brief not supported by the record." (Doc. 13, Exhibit 4, at 8 n.5.) More specifically, the undersigned would note the record evidence that the victim died as a result of *two* shotgun wounds to her head (Doc. 13, Exhibit 1, Guilty Plea Tr. at 18) undermines McCall's post-conviction position that the shooting of his wife was accidental.

(Doc. 13, Exhibit 4, at 1-8 (internal citations, brackets, and most quotation marks omitted).) Because petitioner did not take any further action with respect to his direct appeal, a certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on February 4, 2004. (Doc. 13, Exhibit 5.)[8]

McCall filed a Rule 32 petition seeking collateral relief in the Circuit Court of Monroe County, Alabama on September 15, 2004. (*See* Doc. 13, Exhibit 6, Rule 32 Petition (reflecting that McCall signed the petition on September 15, 2004).) The trial court summarily denied the petition on October 6, 2004. (Doc. 13, Exhibit 6, DENIAL OF RULE 32 PETITION.)

> Petitioner's asserts three claims. No claim asserted by the petitioner requires an evidentiary hearing. The undersigned presided over the plea made by the petitioner.
>
> The first claim is that the trial judge abused his discretion by not allowing the petitioner to withdraw his plea of guilty and not granting a motion for new trial. Petitioner filed a motion to withdraw his plea, it was denied. Petitioner appealed to the Alabama Court of Criminal Appeals which affirmed his conviction and specifically addressed this issue and the underlying issue of the denial of the motion for a mental status examination. No application for a writ of certiorari was made. This ground has no merit and is denied as being precluded.
>
> The second claim is that the petitioner was denied his right to the

---

[8]     There is no record support for McCall's conclusory allegation in his federal habeas petition that he filed a petition for rehearing and/or a petition for writ of certiorari. (*See* Doc. 1, at 3.) Indeed, in summarily dismissing McCall's first Rule 32 petition, the trial court noted that "[n]o application for a writ of certiorari was made." (Doc. 13, Exhibit 6, DENIAL OF RULE 32 PETITION.)

effective assistance of counsel. The allegation is that counsel was
ineffective because McCall made a best interest plea. This matter was
appealed and this issue could have been raised on that appeal. The Court
of Criminal Appeals found that an adequate factual basis for the plea was
made during the colloquy. This claim is precluded.

The third claim is that the indictment was defective. It was not. This
claim is denied.

(*Id.*)  McCall filed written notice of appeal on November 4, 2004. (Doc. 13, Exhibit 6,

NOTICE OF APPEAL.)

On February 18, 2005, the Alabama Court of Criminal Appeals affirmed the trial

court's summary denial of McCall's Rule 32 petition by memorandum opinion. *McCall*

*v. State*, 925 So.2d 1018 (Ala.Crim.App. Feb. 18, 2005) (table).

McCall filed the present petition on September 22, 2004. In his
petition, McCall alleged (1) that the trial court committed reversible error
in denying him the right to withdraw his best interest guilty plea and
proceed to trial on the indictment; (2) that his trial counsel was
ineffective—he argued that he was following his trial counsel's advice
when he agreed to enter a guilty plea to the lesser-included offense of
murder because he did not want to chance spending the rest of his life in
prison without the possibility of parole and he relied on his attorney's
representation that the State had offered a 25-year sentence and that if he
had proceeded to trial, the jury most probably would have found him
guilty of manslaughter based on his statement that he and his wife had
struggled over the gun and the shots were fired accidently; and (3) that
the indictment was defective because, he said, it is vague, ambiguous and
indefinite, and it did not charge an offense or allege an essential element
of the charged offense. Without awaiting a response from the State, the
circuit court issued an order summarily denying McCall's Rule 32
petition.

Claim (1), as set out above, is precluded by Rule 32.2(a)(4),
Ala.R.Crim.P., because the argument raised in Claim (1) is <u>exactly</u> the

same argument raised and addressed on direct appeal.

As for Claim (2), specifically, McCall contended:

From the sentencing colloquy, it is apparent that there was no factual basis for the plea and Mr. McCall was following his attorney's advice when he agreed to accept the plea because he was afraid of spending the rest of his life in prison without the possibility of ever being paroled. McCall admitted to no wrongdoing at his sentencing and based upon the trial court's statements that all he could have received was a life sentence, he risked nothing in going to trial. In his motion to withdraw the best interest plea, Mr. McCall stated that his attorney told him the District Attorney had offered twenty-five years not life. He states his attorney made this representation to him and he relied upon it.

Had Mr. McCall gone to trial and had the opportunity to present his case to a jury, the outcome probably would have been different. The jury would have most probably found him guilty of manslaughter if they believed his statement that he and his wife had struggled over the gun and the shots fired were accidental.

In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden to show (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. To prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Furthermore, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

We have reviewed the record from McCall's direct appeal[], including a transcript of the guilty-plea proceedings, and we conclude

11

that McCall's allegations of ineffective assistance of trial counsel are without merit. First, we note that an adequate factual basis existed for McCall's guilty plea. We also note that during the guilty-plea proceedings, the trial court discussed the plea agreement with McCall—the plea agreement stated that the State would recommend that McCall be given a life sentence—and ascertained that McCall understood the terms of the plea agreement and that he had signed it. There was no mention during the guilty-plea proceedings that McCall's trial counsel had represented to McCall that the State had offered to recommend a 25-year sentence rather than a life sentence. In fact, during the guilty-plea proceedings, the trial court asked McCall "Has anybody promised you anything except what's in the Plea Agreement in order to get you to plead guilty?" and McCall replied, "No, sir." Additionally, we note that McCall indicated to the trial court that he was pleading guilty "because in accepting this sentence for life instead of life without parole . . . under these facts [he felt] like it would be the best thing for [him] to do."

Although McCall alleged that "based upon the trial court's statements that all he could have received was a life sentence, he risked nothing in going to trial"[], our review of the direct appeal record demonstrates that this statement is incorrect. Prior to accepting McCall's guilty plea, the trial court heard from members of the victim's family, who opposed the State's allowing McCall to enter a guilty plea and receive a life sentence (and thereby possibly be eligible for parole one day). During the trial court's discussion with these family members, the trial court stated, "For what it's worth, if this crime had not occurred within an automobile . . . he would have received exactly the same sentence." However, this crime did occur within an automobile; thus, McCall was properly charged with capital murder under § 13A-5-40(a)(17). If he had proceeded to trial on the capital-murder charge and had been convicted of that charge, he would have been sentenced to life imprisonment without the possibility of parole. Thus, it is clear that McCall decided to enter a best-interest plea in order to receive the life sentence instead of risking a capital-murder conviction which would have carried a sentence of life imprisonment without the possibility of parole. Therefore, McCall is not entitled to any relief on his ineffective-assistance-of-trial-counsel claim.

As for Claim ([3]), McCall maintains that his indictment was vague, ambiguous and indefinite and that it did not charge an offense or allege

12

an essential element of the charged offense. The indictment stated that McCall

> did intentionally cause the death of another person, to-wit: Janice [Eloise] McCall, by or through the use of a deadly weapon, to-wit: shooting her with a pistol, while the said Janice [Eloise] McCall was inside a vehicle, in violation of 13A-5-40(a)(17) of the Code of Alabama.

Rule 13.2(a), Ala.R.Crim.P., provides that an indictment shall be a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment. In Alabama, an indictment is sufficient if it substantially follows the language of the statute violated, provided the statute prescribes with definiteness the elements of the offense.

Section 13A-6-2(a)(1), Ala. Code 1975, states that "[a] person commits the crime of murder if . . . [w]ith intent to cause the death of another person, he causes the death of that person or of another person." Section 13A-5-40(a)(17), Ala. Code 1975, states that murder committed by or through the use of a deadly weapon while the victim is in a vehicle is a capital offense. McCall's indictment tracked the language of the relevant statutes. Thus, McCall's claim that the indictment in this case was defective is meritless.

McCall contends that the circuit court erred in summarily denying his Rule 32 petition. However, Rule 32.7(d), Ala.R.Crim.P., provides:

> Summary Disposition.  If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may . . . dismiss the petition.

All the claims in McCall's Rule 32 petition were either precluded or meritless. Thus, the circuit court properly denied the petition without

13

> further proceedings. The circuit court's summary denial of McCall's Rule
> 32 petition is affirmed.

(Doc. 13, Exhibit 9, at 2-6 (most internal citations, quotation marks and brackets omitted; footnote omitted).) McCall's application for rehearing was overruled by the Alabama Court of Criminal Appeals on March 25, 2005 (Doc. 13, Exhibit 10) and his petition for writ of certiorari was denied by the Alabama Supreme Court on July 8, 2005, *Ex parte McCall,* 946 So.2d 543 (Ala. July 8, 2005) (table). A certificate of final judgment was issued by the Alabama Court of Criminal Appeals on July 11, 2005. (Doc. 13, Exhibit 13.)

McCall filed a second Rule 32 petition in the Circuit Court of Monroe County, Alabama on January 30, 2006. (*Compare* Doc. 1, at 4 *with* Doc. 13, Exhibit 14, at 2.) The trial court denied the petition following an evidentiary hearing. (*Id*.) The Alabama Court of Criminal Appeals affirmed the trial court's denial of the petition by memorandum opinion entered on December 19, 2008. *McCall v. State*, 33 So.3d 650 (Ala.Crim.App. Dec. 19, 2008) (table).

> The [trial] court found that McCall's sole claim, that the indictment was
> amended without his consent, was without merit according to the official
> transcript. The court also found that the claim was precluded because the
> validity of the indictment had been adjudicated on appeal, in McCall's
> first Rule 32 petition and on appeal from the denial of the first petition.

## I.

McCall contends that the trial court violated § 15-8-90, Ala. Code 1975, by amending the indictment to change the name of the victim, his wife, from "Janice Delouis McCall" to "Janice Elouise Martin," in order to correct the spelling of "Elouise" and to reflect her maiden name. He

argues that he did not consent to the change, that his counsel was not authorized to make this decision for him and that he did not fully understand his rights.

The trial court properly denied McCall's claim as precluded because McCall had challenged the indictment in prior proceedings as insufficiently specific and as lacking an essential element. His present petition was successive [], pursuant to Rule 32.2(b), Ala.R.Crim.P., and it raised the same or a similar ground. Therefore, he was not entitled to relief.

McCall's claim also was without merit. The plea transcript reflects that after the defense counsel brought the spelling error in the name of the victim to the attention of the trial court, the court stated: "If there's no objection and with the consent of the defendant, we will amend the indictment so that the indictment reads that the victim's name is Janice Elouise Martin[,] J-A-N-I-C-E[] E-L-O-U-I-S-E[] M-A-R-T-I-N, as her maiden name and she would be a McCall after her marriage to Mr. McCall." The defense counsel agreed to the changes, and McCall told the court that he understood the charges against him. At the evidentiary hearing, McCall admitted that he had understood the charge of capital murder and that an element of the charge was "killing Janice Elouise Martin." The trial court did not err in finding that the transcript indicated that McCall's claim was meritless. Postconviction allegations that are refuted by the trial record are without merit.

II.

McCall also contends that he was indicted under one Code section and sentenced under another, that this was a substantial change in the indictment and that this change was outside the limits of § 15-8-90. His argument cannot be considered because he did not include it in his petition to the trial court. This court will not consider an argument that is raised for the first time on appeal.

McCall's argument also is without merit. It is undisputed that intentional murder, the charge to which McCall pleaded guilty, was a lesser included offense of capital murder, the charge for which he was indicted. Because McCall pleaded guilty to a lesser included offense,

amendment of the indictment was not required.

> For the foregoing reasons, the judgment of the trial court is affirmed.

(Doc. 13, Exhibit 14, at 2-4 (internal citations omitted).) A certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on January 7, 2009. (Doc. 13, Exhibit 15.)

McCall filed his third Rule 32 petition in the Circuit Court of Monroe County, Alabama on June 25, 2009. (*Compare* Doc. 1, at 5 *with* Doc. 13, Exhibit 16, at 2.) The trial court summarily dismissed the petition as successive on July 1, 2009. (Doc. 13, Exhibit 16, at 2.) The Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal by memorandum decision entered on December 4, 2009. *McCall v. State*, 64 So.3d 1161 (Ala.Crim.App. Dec. 4, 2009) (table).

> On appeal, McCall reasserts the allegation presented in his petition to the circuit court [i.e., that the trial court was without jurisdiction to render judgment or to impose sentence because the indictment was illegally amended without his consent]. McCall's claim is procedurally barred by Rules 32.2(a)(4) and 32.2(b), Ala.R.Crim.P., as it has been raised and addressed in a previous post-conviction petition. Consequently, the circuit court did not abuse its discretion by summarily dismissing this petition.

(Doc. 13, Exhibit 16, at 2 (internal citations omitted).) McCall's petition for writ of certiorari was denied by the Alabama Supreme Court on September 10, 2010 (Doc. 13, Exhibit 17); the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance that same day, September 10, 2010 (Doc. 13, Exhibit 18).

16

On or about August 3, 2011, McCall filed yet another Rule 32 petition in the Circuit Court of Monroe County, Alabama, his fourth state collateral petition. (*See* Doc. 13, Exhibit 19.) Some twenty days later, on August 23, 2011, McCall filed the instant habeas corpus petition in this Court (*see* Doc. 1, at 13) and from that document the undersigned discerns that petitioner raises the following claims which he contends entitle him to relief: (1) whether it was the Alabama legislature's intent in passing § 13A-5-40 to make murder a capital offense when both the victim and perpetrator are in the vehicle and no other felony circumstance exists; (2) his conviction was obtained by a plea of guilty which was unlawfully induced or otherwise not made voluntarily with an understanding of the charges and consequences of the plea; (3) denial of effective assistance of counsel; and (4) whether intentional murder, Ala.Code § 13A-6-2(a)(1), is a lesser-included offense of capital murder, Ala.Code § 13A-5-40(a)(17) (*id.* at 7-9). Petitioner requests that this Court hold his federal petition in abeyance pending his exhaustion of grounds 1 and 4 above in the state courts of Alabama. (*Compare* Doc. 1, at 7-9 & 12 *with* Doc. 6.) In his federal petition, McCall also contends that the statute of limitations contained in 28 U.S.C. § 2254(d) in inapplicable since an attack on an illegal sentence can be raised at anytime under Alabama law, he was ignorant of this ground for relief until he filed his fourth Rule 32 petition in the Circuit Court of Monroe County, Alabama on August 3, 2011, and he can find no authority to support the proposition that intentional murder is a lesser-included offense of capital murder based

17

on the facts of his case. (*See* Doc. 1, at 12.)

In answer to the petition, the respondent contends that McCall's federal habeas petition comes too late and is time-barred under 28 U.S.C. § 2244(d). (Doc. 13, at 6-9.) McCall was extended the opportunity to respond to the respondent's statute-of-limitations defense (*see* Doc. 14) and, on February 27, 2012, petitioner filed a reply to the respondent's answer (Doc. 21).

In this court's order of September 16, 2011 (Doc # 5), this Court directed that "[t]he answer shall strictly comply with the requirements of Rule 5 of the Rules Governing § 2254 cases in the United States District Courts."

Petitioner concedes that Doc # 13 is voluminous. Nevertheless, petitioner asserts that his second Rule 32 petition (filed on January 30, 2006) and his third Rule 32 petition (filed on June 19, 2009), is absent, and is completely material to the issue of determining the applicability of 28 U.S.C. § 2244(d).

.    .    .

Based upon the foregoing, petitioner request that the Court entertain said petition for habeas relief in that he is not procedurally barred by 28 U.S.C. § 2244(d), based upon the proper filing and exhaustion of available post conviction remedies.

Based upon the foregoing, petitioner request that the petition be held in abeyance in that (1) the record is insufficiently complete by absence of two (2) records on appeal to determine that factual development of the issues has not been made, and (2) that a properly filed Rule 32 petition is pending to determine whether a violation of the U.S. Constitution exists.

(Doc. 21, at 1-2 & 8.)[9]

## CONCLUSIONS OF LAW

**A.     Statute of Limitations & Application of the Statute to the Facts of this Case.**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254.  *Wilcox v. Florida Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[9]      The undersigned finds it unnecessary to set forth the remainder of petitioner's reply to the respondent's answer (*see id*. at 2-7) because it in no way impacts this Court's analysis of the statute-of-limitations defense raised by the respondent; instead, these pages of the reply are devoted to simply reminding this Court of the claims raised in the petition (*see id*.).

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's case and therefore, the timeliness of McCall's petition must be calculated under § 2244(d)(1)(A) based upon the date on which his intentional murder conviction became final.  "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996."  *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is obviously not applicable in this case since McCall's conviction became final in 2004.

Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" On direct appeal, the

20

Alabama Court of Criminal Appeals affirmed McCall's conviction and sentence by memorandum decision entered on January 16, 2004. Because petitioner did not seek rehearing or file a petition for writ of certiorari,[10] the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance on February 4, 2004, and McCall's murder conviction became final on that date. *Brown v. Hooks*, 176 Fed. Appx. 949, 951 (11th Cir. Apr. 18, 2006) ("On March 23, 2001, the Alabama Court of Criminal Appeals affirmed his conviction. Brown did not petition for *certiorari* review in the Alabama Supreme Court, and his conviction became final on April 10, 2001, when the Certificate of Judgment issued."); s*ee also Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) ("Bridges pled guilty to terroristic threats, aggravated assault and stalking charges, and was sentenced to 26 years' imprisonment on November 12, 1996. He did not appeal his convictions and sentences, but he did request that his sentence be reviewed by a sentence review panel, pursuant to O.C.G.A. § 17-10-6. . . . As provided in 28 U.S.C. § 2244(d)(1)(A), his judgment became final on the date that the time for seeking direct review expired; this date was not affected by his application for sentence

---

[10]     McCall's failure to file a proper petition for writ of certiorari in the Alabama Supreme Court prevented the court of last resort in Alabama from considering his direct appeal; therefore, the Supreme Court of the United States clearly would have been unable to consider McCall's case on direct review. *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) ("The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of 'the highest court of a State in which a decision could be had.' . . . A defendant has 90 days from the judgment of the state court of last resort to file a petition for a writ of certiorari in the Supreme Court of the United States. . . . In the absence of a clear statutory or constitutional bar to higher state court review . . . the Supreme Court requires petitioners to seek review in the state's highest court before filing a petition for writ of certiorari.").

review, because an application for sentence review is not a part of the direct appeal process under Georgia law. . . . Accordingly, Bridges' judgment of conviction became final on December 21, 1996, the date on which his 30-day right to appeal the November 21, 1996 judgment expired."); *Tinker v. Moore*, 255 F.3d 1331, 1332 & 1333 (11th Cir. 2001) ("Tinker was convicted on the robbery charge, and on January 29, 1997, the Third District Court of Appeal affirmed his conviction. . . . The mandate issued on February 14, 1997. . . . Under Florida law, a judgment against a criminal defendant becomes final upon issuance of the mandate on his direct appeal. . . . Tinker's mandate issued on February 14, 1997, and thus he had until February 13, 1998, to file his § 2254 petition, absent tolling of the limitations period."), *cert. denied*, 534 U.S. 1144, 122 S.Ct. 1101, 151 L.Ed.2d 997 (2002).[11]

---

[11]      This Court recognizes that AEDPA's one-year statute of limitations "allows a prisoner the time to seek direct review in the Supreme Court of the United States." *Pugh, supra*, 465 F.3d at 1299; *see also Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations should have begun to run, therefore, on March 17, 1997."). However, in those instances, as here, where a petitioner is not entitled to seek review in the Supreme Court of the United States, he is not entitled to the benefit of the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court, Sup. Ct. R. 13.1 ("Unless otherwise provided by law, a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after the entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."); 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a

Petitioner's one-year period of limitations under AEDPA began to run on February 4, 2004 and ran unabated for 224 days until McCall filed his first Rule 32 petition in the Circuit Court of Monroe County, Alabama on September 15, 2004. (*See, e.g.*, Doc. 13, at 3.) McCall's one-year limitations period was tolled until the certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on July 11, 2005 (*see* Doc. 13, Exhibit 13), thereby ending petitioner's first collateral attack on his conviction and sentence. McCall's one-year limitations period began to run again on July 12, 2005 and expired some 141 days later, on November 29, 2005, several months prior to the filing of his second Rule 32 petition in the Circuit Court of Monroe County, Alabama on January 30, 2006 (*see* Doc. 1, at 4). *Compare McCloud v. Hooks*, 560 F.3d 1223, 1227 (11th Cir. 2009) ("While a Rule 32 petition is a tolling motion under § 2244(d)(2), it cannot toll the one-year limitations period if that period has expired prior to filing the Rule 32 petition.") *with Howell v. Crosby*, 415 F.3d 1250, 1251 (11th Cir. 2005) ("On March 19, 1999, Howell's attorney filed a motion for an extension of time within which to file a petition for postconviction relief. That motion was granted and Howell's attorney filed

---

decision could be had, may be reviewed by the Supreme Court by writ of certiorari where . . . any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."). *See Pugh,* 465 F.3d at 1299-1300. As previously established, McCall did not seek certiorari relief in the state court of last resort, that is, the Alabama Supreme Court; therefore, he was not entitled to seek direct review in the United States Supreme Court. *See id.* McCall's conviction became final when the certificate of judgment issued from the Alabama Court of Criminal Appeals on February 4, 2004, *Brown, supra,* and this Court need not add to that final judgment date the 90 days contemplated in Supreme Court Rule 13.1, *compare Pugh,* 465 F.3d at 1299-1300 *with Tinker, supra,* 255 F.3d at 1332 & 1333.

a state petition for postconviction relief on August 30, 199 9, more than two months after the federal limitations period elapsed. It is undisputed that Howell's motion for an extension of time did not meet the criteria of section 2244(d)(2) as a 'properly filed application' for postconviction relief."), *cert. denied*, 546 U.S. 1108, 126 S.Ct. 1059, 163 L.Ed.2d 885 (2006), and *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 413, 125 S.Ct. 1807, 1811-1812, 161 L.Ed.2d 669 (2005) ("As in *Artuz*, we are guided by the 'common usage' and 'commo[n] underst[anding]' of the phrase 'properly filed.' In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exceptions. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay."). Because petitioner did not file his federal habeas challenge to his conviction and sentence until August 23, 2011 (Doc. 1, at 13), almost six years after the

one-year limitations period expired on November 29, 2005, the only arguable means by which this Court can proceed further in its analysis is by finding that petitioner is entitled to equitable tolling of AEDPA's one-year limitations period.

Recently, in *Holland v. Florida*, 560 U.S. __, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court specifically held, for the first time, that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" *id.* at __, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at __, 130 S.Ct. at 2562. For its part, the Eleventh Circuit has long embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted).  Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances"

25

beyond petitioner's control made it impossible for him to file his petition on time.  *See*

*Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998)

("[E]quitable tolling is proper only when the 'principles of equity would make [the]

rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the

petitioner has 'in some extraordinary way . . . been prevented from asserting his or her

rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in

investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient.").

The Supreme Court in *Holland* indicated that "[t]he diligence required for equitable

tolling purposes is reasonable diligence, not maximum feasible diligence[,]" *id*. at _, 130

S.Ct. at 2565, and gave the following guidance with respect to "extraordinary

circumstances":

> We have previously held that "a garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.

> The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have

26

elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at __, 130 S.Ct. at 2564.

In this case, petitioner has not established that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *See Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'"). Petitioner makes no argument that he was ignorant of the one-year limitations period (*compare* Doc. 1 *with* Doc. 21).[12] Instead, it is McCall's apparent position that the one-year limitations period

---

[12]    In truth, such an argument would not serve as a basis to equitably toll the limitations period. *Gardner v. Walker*, 2005 WL 1127137, *1 (M.D. Ga. May 7, 2005) ("'Ignorance of the law is no excuse; it is not a reason for equitable tolling.' . . . Here, Petitioner's Objection is without merit because his ignorance of AEDPA's limitations period fails to amount to 'extraordinary circumstance[s]' for equitable tolling purposes."); *see also Burton v. Deloach*, 2008 WL 2131398, *2 (M.D. Ala. Mar. 13, 2008) ("The law is well settled that an inmate's lack of legal knowledge, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period."), *report & recommendation adopted*, 2008 WL 2131395 (M.D. Ala. May 20, 2008); *see Teel v. Farrell*, 2006 WL 1148817, *4 (M.D. Ala. Apr. 28, 2006) ("[A]n inmate's status as a pro se litigant does not warrant equitable tolling.").

27

simply is not applicable to his case since he raises jurisdictional issues (*see* Doc. 1, at 12) and, further, that he properly filed and exhausted all available post-conviction remedies (*see* Doc. 21, at 8). To the extent petitioner contends that he properly filed and exhausted all post-conviction petitions (i.e., Rule 32 petitions) in the state courts of Alabama (*see* Doc. 21, at 8), the undersigned respectfully disagrees with this assessment. As reflected above, while McCall's first Rule 32 collateral petition did toll the running of his one-year limitations period, the one-year limitations period began to run again on July 12, 2005 and expired before McCall filed his second Rule 32 petition on January 30, 2006.[13] Thus, petitioner has no viable argument in this regard. More importantly, with respect to petitioner's implicit jurisdictional argument for tolling the limitations period (*see* Doc. 1, at 12), he has cited no authority which stands for this proposition; in fact, the authority which exists stands for the contrary. *See, e.g., Barreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008) (pointing out that "[n]othing in the language of § 2255

_____

[13]    By petitioner's own admission his second Rule 32 petition was not filed until January 30, 2006 (*see, e.g.,* Doc. 21, at 2); therefore, his argument that this Court should hold the instant petition in abeyance until all the state-court records directed to his second and third Rule 32 petitions are produced (*see id.* at 1-2 & 8) is specious. Stated differently, because the one-year limitations period expired in this case before McCall filed his second Rule 32 petition, there is simply no need for this Court to have "all" state records referencing his second and third Rule 32 petitions; the state-court records produced by the respondent and directed to these two state-court collateral petitions (*see* Doc. 13, Exhibits 14-18) are sufficient.

    The undersigned need also note here that since petitioner's second and third Rule 32 petitions did not toll the one-year limitations period, *see, e.g., McCloud v. Hooks, supra,* 560 F.3d at 1227, the fourth Rule 32 petition McCall filed in the Circuit Court of Monroe County, Alabama on August 3, 2011 obviously does not toll the limitations period, whether "properly" filed or not.

28

suggests that jurisdictional challenges are exempt from the one-year limitations period"

and holding that such petitions "are not exempt from § 2255's filing deadline"); *Davis v.*

*Secretary, Dep't of Corrections*, 2009 WL 4730548, *1 (M.D. Fla. Dec. 7, 2009) ("There is no

exception under AEDPA's statute of limitation for a § 2254 claim that the state court

lacked subject matter jurisdiction to impose the sentence for the conviction because the

indictment was defective."); *United States v. Williams*, 2009 WL 3230399, *8 (N.D. Fla.

Oct. 2, 2009) ("Jurisdiction is specifically listed as a ground for § 2255 relief, and is not

excluded from [] the one year limitations period of § 2255(f)[.]"), *aff'd*, 383 Fed.Appx.

927 (11th Cir. June 21, 2010), *cert. denied*, __ U.S. __, 131 S.Ct. 846, 178 L.Ed.2d 575 (2010).

Accordingly, the undersigned concludes that nothing other than petitioner's own lack

of due diligence is responsible for the untimeliness of the filing of the instant petition.

This is simply not one of those rare cases in which principles of equitable tolling can

save petitioner from AEDPA's one-year limitations period.

## B.   Certificate of Appealability.

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned

recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll.

§ 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant."). The habeas corpus statute makes

clear that an applicant is entitled to appeal a district court's denial of his habeas corpus

petition only where a circuit justice or judge issues a certificate of appealability. 28

U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Because equitable tolling is an extraordinary remedy which is rarely granted, *see Diaz, supra,* 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), the undersigned finds that a reasonable jurist could not conclude that this Court is in error for dismissing the petition or that McCall should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be

30

allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *See, e.g., Brightwell v. Patterson,* CA 11-00165-WS-C, Doc. 14 (order from Eleventh Circuit denying petitioner a certificate of appealability in a case in which this exact procedure was outlined in the report and recommendation); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge recommends that Leon McCall's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed as time-barred under § 2244(d). McCall is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

      **DONE** this the 30th day of March, 2012.

                 s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[14]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).